# W. A. Dunshee, Plff. in Err. v. Robert T. Carothers.

## E. C. Converse, Plff. in Err., v. Same.

The presumption that the holder of a negotiable instrument, indorsed in blank, gave value for it, at its date, in the usual course of business, and without notice of anything to impeach his title, is not overcome by proof that the last indorser used the note until the last day of grace, as collateral security for a loan from the bank at which it was payable.

(Decided November 15, 1886.)

Argued November 4, 1886, before Gordon, Paxson, Trunkey, Sterrett, and Green, JJ.   October Term, 1886, Nos. 155, 156, W. D.   Error to Common Pleas No. 1 of Allegheny County to review judgments on a verdict for the plaintiff in actions of assumpsit.   Affirmed.

These were two cases by the holder against the maker and an indorser of the following promissory note:

"$3,000.              McKeesport, Pa., Dec. 14, 1881.

"Three years after date, I promise to pay to the order of E. C. & J. B. Converse, at the People's Savings Bank, three thousand dollars, without defalcation, for value received, with interest.                                    W. A. Dunshee."

Indorsed:   "E. C. Converse; J. B. Converse; Samuel E. Carothers."

At the trial before Baily, J., the following facts appeared: The note was given to Samuel E. Carothers by W. A. Dun-

Note.—Every holder of a negotiable instrument is deemed, prima facie, to be a holder in due course. Act May 16, 1901 (P. L. 194, § 59). This was true prior to this act. Lamb v. Burke, 132 Pa. 413, 20 Atl. 685; Callen v. Fawcett, 58 Pa. 113. But if it is shown that the title of any person who has negotiated the instrument was defective, then the burden is upon the holder to prove that he or some person under whom he claims acquired the title as holder in due course. The last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title. Act May 16, 1901 (P. L. 194, § 59). So before this act, if it was shown that the note was put into circulation by fraud or undue means, the burden was upon the holder to show that he was such in due course. Lerch Hardware Co. v. First Nat. Bank, 109 Pa. 240; Real Estate Invest. Co. v. Russel, 148 Pa. 496, 24 Atl. 59.

shee in part payment for the purchase of The McKeesport
Times. Samuel E. Carothers indorsed the note and delivered it
before maturity to his brother, Robert T. Carothers, the plain-
tiff, who afterward permitted him to pledge it to the People's
Savings Bank for two successive loans, the last of which was
paid by him on the last day of grace of the note. The note was
protested in the evening of that day, as the property of the
plaintiff. The court directed a verdict for the plaintiff.

The assignment of error specified the exclusion of testimony
that Samuel E. Carothers obtained the note by misrepresenta-
tions as to the value of his newspaper.

*W. B. Rodgers* and *Johns McCleave,* for plaintiffs in error.—
When a note is made payable generally, the maker has the whole
of business hours on the day it is due to pay it; but when it is
payable at a bank, the engagement is that payment shall be made
during banking hours. Edwards, Bills & Notes, § 717; Pierce
v. Struthers, 27 Pa. 253; Church v. Clark, 21 Pick. 310.

When a note is at a bank and payable there, the maker has
the whole period of the usual banking hours to pay it, and if he
does not pay it within those hours it is equivalent to a demand
and refusal of payment on his part, and the note may be pro-
tested without further demand. Bank of United States v. Car-
neal, 2 Pet. 543, 7 L. ed. 513; Edwards, Bills & Notes, § 680;
Chicopee Bank v. Seventh Nat. Bank, 8 Wall. 641, 19 L. ed.
422.

A party, then, taking a note after demand and refusal, or
facts equivalent thereto, takes it dishonored. When a negotiable
note is found in circulation after it is due, it causes suspicion
on the face of it. Fisher v. Leland, 4 Cush. 456, 50 Am. Dec.
805.

The indorsee of overdue paper takes it as a holder with no-
tice that it is subject to some defense, for he takes it at a time
when in due course it should have been paid. Dan. Neg. Inst.
§ 725.

It is then in the eye of the law dishonored paper, and is taken
subject to the equities arising out of or connected with the note
itself. Long v. Rhawn, 75 Pa. 131.

The presumption as to the time of acquiring a bill or note is
not a strong one. The indorsement is almost invariably with-
out date, and without witnesses. The transfer by delivery mere-

ly leaves no footprint upon the paper by which the time can be traced. And the presumption in favor of the holder as to the time of transfer, being without any written corroborative testimony, is of the slightest nature, and liable to be blown away by the slightest breath of suspicion. Hill v. Kroft, 29 Pa. 186.

Everyone must conduct himself honestly in respect to the antecedent parties, when he takes negotiable paper, in order to acquire a title which will shield him against prior equities. He must not wilfully shut his eyes to the means of knowledge which he knows are at hand, because such conduct, whether equivalent to notice or not, would be plenary evidence of bad faith. Goodman v. Simonds, 20 How. 343, 15 L. ed. 934.

*Marshalls & Imbrie,* for defendant in error.—A negotiable instrument payable to bearer or indorsed in blank, produced by the transferee suing to recover its contents, is, when received in evidence, clothed with the prima facie presumption that he became the holder of it for value, at its date, in the usual course of business without notice of anything to impeach his title. Collins v. Gilbert, 94 U. S. 753, 24 L. ed. 170; Swift v. Tyson, 16 Pet. 1, 10 L. ed. 865; Brown v. Spofford, 95 U. S. 478, 24 L. ed. 508; Snyder v. Riley, 6 Pa. 164, 47 Am. Dec. 452; Hill v. Kroft, 29 Pa. 186.

PER CURIAM:

There is no trace of error in these cases. We have searched the evidence in vain to discover proof that the note in controversy was not indorsed in regular form before it was due, and for a valuable consideration, to the plaintiff, Robert T. Carothers. That his brother, from whom he received it, afterwards used it as collateral security for a debt of his own is of no consequence, for on the day it was due it was surrendered to the plaintiff, by the pledgee, and was regularly protested. Under these circumstances it is hardly necessary to say that the defense utterly failed, and that the court rightly directed the jury to return a verdict against the defendants.

Judgments affirmed.